IDA MAE BEAULAC *v.* L. S. ROBIE AND PEARL SLAYTON.

January Term, 1919.

Present: WATSON, C. J., HASELTON, POWERS, TAYLOR, and MILES, JJ.

Opinion filed May 6, 1919.

*Landlord and Tenant—Premises Under Landlord's Control— Care—Evidence—Jury Question—Harmless Error—Instructions.*

The doctrine that if the landlord, while renting premises, retains portions thereof under his control, he owes to his tenants and their invitees the duty of reasonable care to keep safe the part of the premises over which he retains control, is commonly applied to passages, platforms, steps, stairways, and the like used by various tenants of a single structure.

The question whether the defendant, when he leased the building in front of which was the platform in question, retained the control of the platform was for the jury.

The question whether the unsafe condition of the platform in question was due to a want of reasonable care on the part of the defendant was for the jury.

Evidence, unrestricted as to time or to any particular tenant, that defendant's upstairs tenants frequently used the trapdoor in the platform to put wood down through into the cellar was harmless, since all the evidence showed that such use was made of the trapdoor by the upstairs tenants at the time of the accident.

Argument of plaintiff's counsel that the defendant stood and watched his hired man repair the platform after the accident was war-

ranted by the evidence; the argument being subject, at most, to a verbal criticism of no practical importance.

The court correctly charged upon the matter of inconsistency in the defendant's testimony and his testimony at a prior trial, since it was left to the jury to say whether there was an inconsistency, and to determine what weight they would give to the matter if they found such inconsistency.

ACTION OF TORT FOR NEGLIGENCE. Plea, the general issue. Trial by jury at the June Term, 1918, Caledonia County, *Slack,* J., presiding. At the close of plaintiff's evidence the suit was discontinued as to defendant Slayton. Verdict and judgment for the plaintiff against defendant Robie. The defendant excepted. See the prior report of this case, 92 Vt. 27.

The opinion in 92 Vt. 27, shows the following facts: Robie was the owner of two connected buildings, one of which he occupied as a grist mill, while he rented the other to two tenants, an upstairs tenement to one Chaffee and a store on the ground floor to Slayton. Plaintiff's accident occurred on a platform in front of the store rented to Slayton. There were platforms in front of and attached to the two buildings, that in front of the store being one step higher than the mill platform. Slayton occupied under a verbal lease, in which no mention was made of the store platform, and nothing was said as to who should make repairs on the premises. The platform was used by Slayton for receiving and storing goods and by his customers in entering the store. It was used by customers of both Slayton and Robie in going from one place of business to the other and by both Slayton and Robie in passing back and forth between their places of business. At the time Robie leased to Slayton there was a trapdoor in the platform furnishing access to a cellar window beneath. The lease to Chaffee was subsequent to that to Slayton. His lease included the tenement upstairs and room in the cellar under the store for wood and coal and gave him the right of access to the cellar through the trapdoor in the platform. Chaffee occasionally used the trapdoor to put wood into the cellar, and was the only one who had occasion to use it. Slayton occupied no part of the cellar under his store. Robie testified that he had no occasion to use the platform after his lease to Slayton and made no use of it except to cross it occasionally in going to Slayton's store.

When Chaffee went into possession of the upstairs tenement the trapdoor consisted of three boards securely fastened together by cleats, and no question was made but that in this condition it was perfectly safe. Later, and several months before plaintiff's accident, Chaffee requested one Dunbar, Robie's miller, to separate the boards so they could be removed singly. In response to this request Dunbar sawed through the cleats, thereby separating the boards. There was no evidence tending to show that in doing this Dunbar was acting within the duties of his employment. It was done without Robie's knowledge or subsequent approval. There was no evidence that Robie knew that the trapdoor had been changed until after plaintiff's accident. Plaintiff's evidence tended to show that her injury was occasioned by stepping upon one of the boards which had been displaced and gave way under her weight, precipitating her into the hole under the platform. The accident happened as she was going into Slayton's store to purchase goods.

Soon after the accident Dunbar, of his own notion, fixed the trapdoor to make it safe. Robie was absent at the time Dunbar started on this work but came to the mill while the work was progressing and made no objection. The work was done "on Robie's time," as he made no reduction from Dunbar's weekly pay on account of the time thus employed.

*Porter, Witters & Harvey* and *John W. Redmond* for the defendant.

*William R. McFeeters* and *Rufus E. Brown* for the plaintiff.

HASELTON, J. This is an action of tort for injuries that befell the plaintiff in consequence of her stepping through a defective part of a platform owned by the defendant Robie while she was making her way as a customer across the platform into a store owned by the defendant Robie and occupied by the defendant Slayton under a lease from Rcbie. The case has once before been here on exceptions taken at a former trial. On that trial the plaintiff had judgment against both defendants, but on review here that judgment was reversed, and the cause remanded by reason of errors in the instruction of the court to the jury. 92 Vt. 27, 102 Atl. 88.

On the trial under review, the plaintiff, at the close of her

evidence, discontinued the suit as to the defendant Slayton, and the jury gave a verdict against the defendant Robie, who will hereafter be spoken of by name or as the defendant. Judgment was rendered on the verdict, and the defendant brings a bill of exceptions. The trial under review will hereinafter be designated as the trial, and whenever there is occasion to refer to the former trial it will be so designated.

The transcript of evidence taken on the trial is made a part of the bill of exceptions, and, notwithstanding the testimony of certain witnesses somewhat at variance with the statement of facts in the former opinion in the case, there is before us substantial evidence tending to show the facts narrated in such statement; and for this reason an extended account of what the evidence now tends to show is unnecessary. Such references to the testimony as is required will be made as the exceptions are taken up.

At the close of all the evidence the defendant moved that a verdict be directed in his favor. His motion was overruled, and he excepted. Two grounds of the motion are briefed.

The first ground is that, as matter of law on the evidence, Robie did not have control of the platform, and that the burden of repairs was not on him. This ground of the motion we now consider.

The platform in question was in front of and appurtenant to a store building that Robie had leased, and had Robie leased the entire building to one tenant the sole control of the platform would, in the absence of evidence to the contrary, have been that of the tenant.

But such was not this case. A part of the ground floor of the building in question, the store proper, was under a lease to Slayton which made no mention of the platform, and a tenement over the store was occupied by one Chaffee under a lease which gave him also the use of the basement or room therein for storing wood and coal and a right of access to the basement through a trapdoor which consisted of three planks of the platform. Robie's own testimony tended to show that this lease to Chaffee was made after the lease to Slayton, and that the right to use a part of the platform in the way indicated was his to grant notwithstanding the lease to Slayton, in which no mention of the platform was made. The evidence as to the order of time in which the leases were given was contradictory, but, in considering the de-

fendant's motion for a verdict, the view most favorable to the
plaintiff is to be taken. Under both leases, which were oral, the
obligation to keep in repair the premises leased fell upon the
tenants respectively. The question here is what was leased. Was
the platform leased or did it remain under the control of Robie,
the owner? The terms of the lease, as testified to, do not de-
termine this question. When this case was before here, the
familiar and well settled doctrine was announced that "if the
landlord while renting premises, retains portions thereof under
his control, the responsibilities for injuries to persons rightfully
there is his." In each case the landlord as owner owes to his
tenants and their invitees the duty of reasonable care to keep
safe the part of the premises over which he retains control.
The doctrine finds its common application in the case of passages,
platforms, steps, stairways, and the like used by various tenants
of a single structure. *B. Shoningen Co.* v. *Mann,* 219 Ill. 242,
76 N. E. 354, 3 L. R. A. (N. S.) 1097; *Sawyer* v. *McGillicuddy,*
81 Me. 318, 17 Atl. 124, 3 L. R. A. 458, 10 Am. St. Rep. 260;
*Coupe* v. *Platt,* 172 Mass. 458, 52 N. E. 526, 70 Am. St. Rep.
293, 16 R. C. L. 1036-1039, 1072, 1073.

When the case was formerly here, it was held that, in all
the circumstances enumerated in the opinion, it was for the
jury to say whether or not Robie, the owner, retained control of
the platform. There was some attempt on the trial to show cir-
cumstances somewhat or slightly different from those mentioned
in the former opinion, but there was substantial evidence tend-
ing to show the material facts and circumstances which, in the
opinion of this Court as heretofore given and now adhered to,
made it impossible for the defendant to have a verdict directed
in his favor on the ground that he was not in control of the
platform.

The other ground of the defendant's motion that is briefed
is this: That, even if he did retain and have control of the
platform, there was no evidence tending to show negligence on
his part. There was evidence tending to show that the part of
the platform constituting the trapdoor had been in an unsafe
condition, considering its uses, for a month or so, by reason of
the looseness of the boards, and though there was no direct evi-
dence that Robie actually knew of the unsafe condition, there
was evidence which made it for the jury to say whether Robie,
who occupied a connecting building and an extension of the plat-

form, was not wanting in reasonable care in respect to the safety of the platform, since he had so much time and opportunity for ascertaining its condition and making needed repairs. Robie was not an insurer of the safety of the platform, but on the theory of his control over it, on which the second ground of the defendant's motion proceeds, he owed to one there, as the plaintiff was, the duty of reasonable care in respect to its safety.

The exception to the refusal of the court to direct a verdict for the defendant was properly overruled.

Without restriction as to time or to any particular tenant the plaintiff was permitted to show by Robie himself that his upstairs tenants frequently used the trapdoor to put wood down through into the cellar. This particular piece of testimony was received under objection and exception on the ground that it was not confined to the time of Chaffee's tenancy upstairs. But all the testimony on the point was to the effect that such use was made of the trapdoor by Chaffee. There was no dispute about this fact, and if there was any technical objection to the testimony so far as it related to other tenants than Chaffee, the testimony was entirely harmless, and the exception thereto is of no avail.

Exceptions that are in effect one were taken to the argument of counsel for the plaintiff. As a circumstance, taken with other circumstances, tending to show, not negligence on the part of Robie, but his control over the platform, the plaintiff had been permitted to introduce evidence tending to show that, immediately after the accident, one Dunbar, who was in the employ of Robie, set about and made repairs on the trapdoor; that Robie saw something of the work and, in effect, treated the making of the repairs by his servant as a matter of course. On the former trial it was held that, on the evidence in that regard, it was for the jury to say whether Robie made the repairs his own by ratifying them, and that, if he did, that circumstance, in connection with other facts which the evidence tended to show, had a tendency to show that Robie had retained control of the platform. There was some discrepancy between Robie's testimony as given on the trial and as given on the former trial, and counsel for the plaintiff argued from Robie's testimony given on the former trial so far as it had been properly brought into the case. Counsel argued that Robie stood and watched his hired man repair the platform, and this statement was repeated. Ex-

ceptions being taken, arguing counsel read or had read the testi-
mony on which he relied, and such testimony furnished a basis
for the argument, except that it did not show that Robie ''stood''
while he saw the repairs going on. The exceptions finally nar-
rowed down to the claim that on the evidence Robie was ap-
proaching and not standing there when he saw what he did
about the repairs. But the exceptions recite the statement of
counsel that was excepted to and it was not that Robie stood
''there'' and watched the repairing, but that he stood and
watched it, or some of it. The exceptions to the argument re-
solved themselves into a verbal criticism of some nicety, but of
no practical importance.

The court charged the jury correctly upon the matter of in-
consistency in the testimony of Robie, provided there was incon-
sistency. The defendant makes no claim to the contrary, but
argues an exception taken on the ground that there was no ques-
tion of inconsistency for the jury to consider. Evidence was in-
troduced that on the former trial Robie testified to the effect that
the first he knew of the repairs was when he saw Dunbar making
them. On the trial he testified to the effect that the first he saw
of the matter was when he saw Dunbar picking up his tools ''as
if'' he had been at work there—that is, in making repairs. The
court left it to the jury to say whether here was an inconsistency,
and to determine what weight they would give to the matter if
they found inconsistency in Robie's testimony. The jury could
find from testimony recited here and some left unrecited that
Robie displayed some lack of frankness, and that his testimony
was in a measure inconsistent. The charge of the court on this
matter was free from undue emphasis and was correct.

The remaining exceptions were to instructions in accord
with views we have already expressed in considering exceptions
one and three. They therefore require no separate discussion.

*Judgment affirmed.*