Robert E. Cameron v. Clement J. and Stella M. Abatiell, Albert E. MacPhail, d.b.a. Pyrofax Gas Service, Pyrofax Gas Corporation

[ 241 A.2d 310 ]

February Term, 1968

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed April 2, 1968

*Bloomer & Bloomer* for the Plaintiff.

*Ryan, Smith & Carbine* for Clement J. and Stella M. Abatiell.

*Webber & Costello* for Albert E. MacPhail.

**Keyser, J.** The defendants are seeking to disclaim responsibility for the safety of a public officer performing a regular and routine service for the protection of their property. He was checking the security of locks on means of ordinary access to the premises. This checking was being made at the rear entrance door which is reached by a set of wooden steps with no suggestion that usage was barred or forbidden.

At the close of the plaintiff's case the court, on motions of the defendants, directed a verdict for each defendant. Plaintiff appealed from the judgments entered on the verdict. The grounds of the motions were threefold, namely, that the plaintiff (1) was a licensee, (2) was guilty of contributory negligence as a matter of law and (3) assumed the risk.

The evidence taken in the light most favorable to the plaintiff shows the operative facts stated below.

Defendants Abatiell have owned a three-story business building in the City of Rutland located at 42-44 Center Street for about thirty-nine years. They have operated a beauty shop at 44 Center Street for some twenty-five years. The store on street level at 42 Center Street was occupied by Sears, Roebuck and Company for over twenty years until 1963. On September 1, 1963, defendant Pyrofax Gas Corporation leased the premises and were in possession on December 19, 1964 when plaintiff suffered his injury. Defendant Pyrofax Gas Service conducted its business at the same location.

The rear entrance door to the Pyrofax store is six feet· above ground level. A series of nine steps (without risers) lead up to a landing in front of the door. To defendants Abatiell's knowledge and without their objection, this entrance was used over an extended period by the employees of both Sears and Pyrofax. There is also a fire escape which terminates on the landing.

At the time Pyrofax leased the premises there were several of the treads on the back steps broken. Defendants Abatiell had these replaced and after plaintiff's accident they had the steps fixed by a carpenter.

The plaintiff has been a police officer of the city for about fifteen years. Plaintiff's beat for about two years included Center Street. At the time of his accident he was working the three to eleven P.M. beat. His duties included checking for fires and the front and rear doors on his beat at night. On December 19, 1964, the plaintiff checked the rear door at 42 Center Street about seven P.M. In descending the steps the fourth step from the bottom broke. This caused plaintiff to fall to the ground resulting in an injury to his back. He did not notice anything wrong with the steps except they and a hand rail had been wobbly for some time. The weather was clear and the steps were not icy or slippery. As he came down the steps he was looking to see if there were any fires. He did not use his flashlight or the hand rail while descending the steps. Checking the doors on his beat was a part of plaintiff's duty and not done for any purpose of his own.

Although plaintiff was never asked by the defendants to check the doors, defendant Abatiell knew the police did check the rear doors to their establishment and had seen them do so. On one occasion the police had called Mrs. Abatiell to tell her that a door was open at their

beauty shop. Mr. Abatiell also knew the police "did check back doors."

In November 1963, another police officer had found the rear door of the Pyrofax store unlocked on two occasions. Each time he went inside and left a note on a desk to this effect. There was one instance when the police notified an employee of Pyrofax by telephone on a Sunday morning that the front door was unlocked.

The first and controlling issue is the determination of the plaintiff's status as an entrant on the premises in question.

■ The general rule is that in the absence of a statute or municipal ordinance, a policeman who comes upon premises in the discharge of his duty, but without an express or implied invitation to enter, is a licensee. 38 Am.Jur., Negligence, §124; 65 C.J.S. Negligence §63 (111).

■ The judicial approach to the problem of balancing interests of the occupier against the interests of a person coming on the premises was formulated during the course of the nineteenth century and still provides the point of departure for modern reasoning. The legal formula generally divides persons entering upon land of another into three classes, viz: trespassers, licensees or invitees (business visitors), and accordingly graduates the duties owed by the occupier of the land. 2 Harper and James, The Law of Torts (1956), 1430, §27.1.

In one particular (in the law of tort) the weight of public opinion has definitely changed and inroads into the traditional immunity of the possessor of land has occurred. The English common law from which our American law is derived was part and parcel of a social system of which the landowners were the backbone. It was inevitable that in such an atmosphere supreme importance should be attached to proprietary interests. Bohlen, Fifty Years of Torts, 50 Harv.L.Rev. 725, 735. "Even before 1886 the wind had somewhat changed. The individual citizen's interest in his personal safety, in which the state also soon came to be recognized as having an interest, began to be given a sufficient importance to deprive landowners of some of their immunities." Id. at page 736. In *Elliman* v. *Gombar,* 86 Ohio App. 352, 91 N.E.2d 801, 803, the court held:

"The trend of the decisions among the various states is to divide those, whose right to enter an owner's premises is derived solely from the owner's consent, into several classes:

"First, those who come upon his premises by his invitation, express or implied, for the transaction of business, or for any other purpose beneficial to him. Invitation may be implied in various ways; for instance, when he enters the premises in the interest or for the benefit of the owners or occupants, as in the performance of a duty, etc.

"Second, those commonly called bare licensees being those to whom he accords his consent out of mere grace, their visit being for their own purely personal purpose."

 Admittedly, plaintiff is not, nor could he be, a trespasser. The defendants contend plaintiff was a gratuitous licensee while the plaintiff maintains he was an invitee or business visitor. The defendants argue that plaintiff was a gratuitous licensee since he was on the premises under authority of law, not by an express or implied invitation, and there were no business dealings between them. The fact that plaintiff was acting as a police officer is not dispositive of the question of liability.

In *Robillard* v. *Tillotson,* 118 Vt. 294, 299, 108 A.2d 524, 527, we said, "To give a person the standing of a business visitor it must appear that his purpose for entering the premises is one of interest or advantage to the occupant," and that "* * * a license is inferred where the object is the mere pleasure or benefit of the person using it." See also *Manley* v. *Haus,* 113 Vt. 217, 221, 32 A.2d 668; *Coburn* v. *Village of Swanton,* 94 Vt. 168, 172, 109 A. 854.

The history of the law on the subject of landowners and licensees shows a tendency to whittle away a rule which no longer conforms to public opinion. The course of judicial decisions has been toward broadening the class of invitees or business guests. 2 Harper and James, *supra,* 1478, §27.12. See Anno. 86 A.L.R.2d 1206, §2.

The majority of the Supreme Court of Illinois in *Dini* v. *Naiditch,* 20 Ill.2d 406, 170 N.E.2d 881, at page 885, 86 A.L.R.2d 1184, stated that "since the common-law rule labelling firemen as licensees is but an illogical anachronism, originating in a vastly different social order, and pock-marked by judicial refinements, it should not be perpetrated in the name of *'stare decisis',*" and that " *'stare decisis'* ought not to be the excuse for decision where reason is lacking." The Illinois court held that a fireman (and by inference, a policeman) performing his duty on private property is an invitee, not a mere licensee, thus hold-

ing the property owner to the duty of reasonable care. The court went on to say that "this legal fiction that firemen are licensees to whom no duty of reasonable care is owed is without any logical foundation," citing Harper, Torts, §96; Prosser, 26 Minn.L.Rev., 573; 35 Mich.L. Rev., 1157.

In *Meiers* v. *Fred Koch Brewery*, 299 N.Y. 10, 127 N.E. 491, 13 A.L.R. 633, the court allowed the plaintiff, a fireman, to recover for injuries caused when he stepped into an unguarded coalhole at night in defendant's driveway intended for use to reach its building which was on fire. Although the court did not define plaintiff's status, it said he was not a licensee or a trespasser. The court held that an owner of premises owes to a fireman entering upon the premises in discharge of his duty, over a means of access prepared for those entitled to enter, a duty to keep the means of access in a reasonably safe condition.

Also in *Beedenbender* v. *Midtown Properties, Inc.*, 4 A.D.2d 276, 164 N.Y.S.2d 276, where a policeman had been summoned by the night watchman of a restaurant to investigate a prowler in the rear of the restaurant, the court held that whether the policeman's entrance was permitted or invited, he was neither an invitee nor a licensee, but *sui generis*.

The Supreme Court of Minnesota in *Shypulski* v. *Waldorf Paper Products Co.*, (1951) 232 Minn. 394, 45 N.W.2d 549, 550, stated that "firemen, policemen, and similar personnel have a status *sui generis*" and "are not licensees in the usual sense of being licensed to enter by virtue of the landowner's consent."

It would be absurd to say that the object of plaintiff's entry on the property was for his own pleasure, convenience or benefit. Not only must the object of his visit thus appear to class him as a licensee but also he must have been upon the land by virtue of the consent of the owner or possessor. *Wool* v. *Larner*, 112 Vt. 431, 435, 26 A.2d 89. Plaintiff does not fall within the category of a licensee since the purpose of his visit does not meet the necessary requirement.

It is the nature of the service and not the official designation of the person rendering it which should determine the legal relationship and resulting liability of the parties.

Some courts have not placed other types of public employees required to enter on a person's property in the performance of their duties in the category of licensees. They have been afforded the pro-

tection of invitees (business visitors). *Morgan* v. *Renehan-Akers Co.,* Vt. 236 A.2d 645 (inspector of weights and measures) ; *Fred Howland Inc.* v. *Morris,* 143 Fla. 189, 196 So. 472, 128 A.L.R. 1013 (building inspector) ; *Anderson & Nelson Distilleries Co.* v. *Hair,* 103 Ky. 196, 44 S.W. 658 (United States revenue officer) ; *Jennings* v. *Industrial Paper Stock Co.* (Mo.App. 1952), 248 S.W.2d 43 (public health inspector) ; *Boneau* v. *Swift & Co.* (Mo.App. 1934), 66 S.W.2d 172, 175 (livestock inspector) ; *Swift & Co.* v. *Schuster,* C.C.A. 10, 192 F.2d 615 (meat inspector) ; 65 C.J.S. Negligence §63 (109) ; 38 Am. Jur., Negligence, §123, n. 14, §126.

Plaintiff's presence on the premises was as a public safety visitor being both in the interest of public safety but primarily for the protection of the defendant's property. He was rightfully on the premises. He was in a place where the defendants knew and reasonably must have expected he would be in performing the particular service which was being rendered and had been for many months of which fact defendants had knowledge.

In this case, as in cases of a public employee, the policeman covering the Center Street beat could reasonably be anticipated and expected not only as to time (in the evening after closing hours) but also as to the exact place. Thus, the defendants had a reasonable opportunity to make the premises safe or to warn plaintiff of any dangerous condition. It was within the reasonable foresight of the defendants of what was likely to happen if the steps leading to the rear door became in disrepair. The plaintiff was not using the stairway to the rear door in an emergency in the discharge of his police duties. His entry on the steps was not to make an arrest or chase a thief or burglar. The circumstances of this case distinguishes it from those cases arising in other jurisdictions which deny recovery.

Here the duty to keep the steps in a safe condition does not increase the burden of their upkeep, there being already a duty to maintain them in a safe condition for use to the Pyrofax entrance. This merely extends the protection of a duty already in existence. Whether the landing and steps could also be used in descending to the ground from the fire escape is immaterial. The evidence is that they were built for use in connection with the entrance to the store.

This case tends to reflect the application of general negligence principles in this area. Under the facts shown by the evidence, the plaintiff in using the steps was in the process of performing a public

service principally for the benefit and advantages of the defendants, a criterion of an invitee or business visitor. And how this service was accomplished both as to time and place was, according to the evidence, known to the defendants. Whether an implied invitation was manifested by the acts or conduct of the defendants which would afford a reasonable basis for such implication was a question of fact.

Considering this case solely on the facts presented, we conclude that the relationship between the plaintiff and the defendants is in essence that of a business visitor, or invitee, on the premises. Accordingly, the rules of protection from injury applicable to such class of persons are controlling. As to these, see *Morgan* v. *Renehan-Akers Co.,* 126 Vt. 494; *supra,* 236 A.2d at page 647. The question of liability was for the jury to decide.

■ Under the circumstances shown, the officer had a right to assume that the premises, aside from obvious dangers, were reasonably safe for the purpose for which he was upon them, and that proper precaution had been taken to make them so. *Johnstone* v. *Bushnell,* 118 Vt. 162, 165, 102 A.2d 334; *Cole* v. *North Danville Coop. Creamery Assn.,* 103 Vt. 32, 40, 151 A. 568.

■■ Whether the defendants had actual knowledge of any defects in the step is not determinative on the question of lack of knowledge. The opportunity for knowledge, when available by the exercise of reasonable care, is the equivalent of knowledge itself. The question is not only whether the defendants knew of the danger but also whether they should have known of the defect in the exercise of reasonable prudence. As to this there was a jury question. *Thompson* v. *Green Mountain Power Corp.,* 120 Vt. 478, 483, 144 A.2d 786.

■ The defendants are in contention as to the control of the steps and landing. Defendants Abatiell urge that under the lease defendant Pyrofax Gas Corporation is responsible for the repair and upkeep of this area. The other defendants deny this claim.

The lease to Pyrofax was for the ground floor with the basement thereunder at 42 Center Street, "being the same space formerly possessed and occupied by Sears, Roebuck and Company as an order office."

Sears constructed the stairs and platform some years before the date of defendant's lease. Sears, as well as Pyrofax, used them, as an

entryway to the store. There was evidence also that they formed a part of the fire escape. The metal fire escape bottomed on the platform which together with the stairs would be used in case of fire by a person descending the fire escape from an upper story of the building to the ground level. At the time Pyrofax leased the premises defendants Abatiell made repairs to the steps and did so again after plaintiff's accident. Mr. Abatiell testified if the stairs were in poor repair he would have had his employee fix them. As stated in defendants' brief— "The question is, as between defendants Abatiell and Pyrofax, who had control of the platform and stairway?" ·

In the posture of the evidence presented there was a factual question for resolution by the jury of whether defendants Abatiell or defendant Pyrofax were in control of the platform and stairs and under the duty to keep them reasonably safe. See *Beaulac* v. *Robie,* 92 Vt. 27, 33, 102 A. 88 and 93 Vt. 275, 279, 107 A. 107; *Lavigne* v. *Rossetti,* 18 Vt. 456, 459, 114 A.2d 407.

The directed verdict for defendant Pyrofax Gas Corporation on this ground of its motion was error.

The motion of Albert E. MacPhail d/b/a MacPhail's Gas Service also embraced this ground of his lack of control over the platform and stairs. The premises were leased to Pyrofax Gas Corporation, not to defendant MacPhail. The evidence is barren to justify a finding that this defendant was in control of the stairs, either by himself or jointly with the lessee, Pyrofax. Defendant MacPhail's motion was properly granted on this ground.

The defendants raise the affirmative defense of contributory negligence. They claim because plaintiff did not look down as he was descending the steps and use his flashlight to see or use the handrail shows negligence. Plaintiff testified the step broke. It is not made evident that this would not have happened had plaintiff been doing all that defendants argue he wasn't doing.

Contributory negligence is ordinarily a question for the jury. As the evidence stood it afforded room for opposing inferences on the part of reasonable persons. The court erred in ruling on this issue as a matter of law. *Johnstone* v. *Bushnell, supra; Sharby* v. *Town of Fletcher,* 98 Vt. 273, 278, 127 A. 300.

As to defendants' defense that plaintiff assumed the risk, we need only say that there is no evidence of any knowledge by the

plaintiff, as there must be, of the existence of the risk, together with an appreciation of the extent of the danger and a consent to assume it. *Berry* v. *Whitney*, 125 Vt. 383, 387, 217 A.2d 41; *Killary* v. *Burlington-Lake Champlain Chamber of Commerce*, 123 Vt. 256, 262, 186 A.2d 170. Granting the defendants' motion on this ground was error.

*Judgment affirmed as to defendant Albert E. MacPhail d.b.a. Pyrofax Gas Service and reversed and cause remanded as to defendants Abatiell and Pyrofax Gas Corporation.*